UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CARLOS MONTEMAYOR, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-11-CV-24-XR |
| | § | |
| HOLLY VENTURA MILLER, J. MITCHELL MILLER, AND THE UNIVERSITY OF TEXAS AT SAN ANTONIO, | § | |
| | § | |
| *Defendants*. | § | |

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

On this day came on to be considered Defendants' Motion to Dismiss pursuant o Fed. R. Civ. P. 12(b)(1) and (6) and 12(c) (doc. no. 7).  Plaintiff filed no response to the motion.

**Background**

Plaintiff filed this case in state court alleging that he was a student at the University[1], is a Mexican-American and dyslexic and was denied certain rights under the Texas Constitution, the Americans with Disabilities Act[2] (ADA), and the Equal Educational Opportunities Act (EEOA)[3].[4]

---

[1] The Original Petition is unclear.  It appears that Montemayor was a graduate student.  In paragraph 7 of his Petition, Plaintiff claims he completed his studies and graduated in January 2010. Petition at ¶ 7.  In Paragraph 19, however, he alleges that he was prevented from graduating in the Spring of 2010.

[2] 42 U.S.C. §§ 12101, et seq.

[3] 20 U.S.C. §§ 1701, et seq.

[4] Petition at ¶ 4.

1

Montemayor alleges that on October 13, 2009, he met with University professor J. Mitchell Miller seeking his assistance in completing a scholarship application, and that Dr. Miller tore up the application, berated him, and yelled at him. Dr. Miller also "refused to sign off on Plaintiff's transcript, all of which served to deny Plaintiff the opportunity to compete for the scholarship."[5] Otherwise, with regard to J. Mitchell Miller, Plaintiff alleges that at some unspecified time Dr. Miller prevented him from "getting keys to the graduate research center" and that this was an "unwarranted, discriminatory action."[6]

On October 27, 2009, Plaintiff alleges that Dr. Miller's spouse, Holly Ventura Miller, also an instructor at UTSA, gave him a grade of "F" on a mid-term examination. He further alleges that on December 15, 2009, he received a grade of "F" from Holly Ventura Miller on the class final exam.[7]

Beginning in December 2009, Plaintiff alleges that Holly Ventura Miller began obtaining and disseminating "various documents and items of information that were protected by Plaintiff's constitutional and statutory right to privacy, with the specific intent to denigrate Plaintiff and to harm him."[8]

Finally, Plaintiff states that the University's Department of Judicial Affairs notified him on

---

[5] Id. at ¶ 8.

[6] Id. at ¶ 15.

[7] Plaintiff alleges that the remarks on both exams were "harsh, picayunish, overly critical and essentially falsely accused Plaintiff of using faulty English, illogicity [sic], and false research." Petition at ¶ 11.

[8] Id. at ¶ 13.

2

February 10, 2010 that Holly Ventura Miller had "brought charges against him of giving false information and of harassment."[9]

## Plaintiff's Allegations

Plaintiff alleges in Count One that all three defendants "conspired, colluded and confederated together to harm Plaintiff by denying him substantive due process and equal protection of the law, which resulted in Plaintiff's inability to graduate in the Spring of 2010[10] and which deprived Plaintiff of the opportunity to obtain the Alpha Phi Sigma scholarship."[11]

In Count Two, Plaintiff alleges all three defendants violated the ADA and EEOA by Holly Ventura Miller's subjecting "Plaintiff to a more rigorous standard when grading him" and by J. Mitchell Miller's subjecting Plaintiff to "harassment, verbal abuse and bullying."[12]

In Count Three, Plaintiff alleges that the Millers intentionally inflicted emotional distress upon him.[13]

In Count Four, Plaintiff alleges that Holly Ventura Miller invaded his privacy by publicizing "information about Plaintiff's private life, employment history, and inter-action with various professors...."[14]

---

[9] Id. at ¶ 12.

[10] This allegation is inconsistent with Plaintiff's statement at paragraph 7 of the Petition which stated that he graduated magna cum laude in January 2010.

[11] Id. at ¶ 19.

[12] Id. at ¶ 22.

[13] Id. at ¶ 25.

[14] Id. at ¶¶ 31-32.

**Defendants' Motion to Dismiss**

Defendants argue dismissal is proper because: (1) there is "no direct cause of action under the United States Constitution for violation of its terms"; (2) the individual defendants are entitled to qualified immunity; (3) Plaintiff fails to allege that the Millers deprived him of any constitutionally protected interest; (4) Plaintiff fails to allege any constitutional claim against UTSA; (5) Section 1983 claims only apply to persons, and state entities, such as UTSA, are not persons subject to section 1983 claims; (6) there is no individual liability under the ADA; (7) Plaintiff's ADA claim against UTSA is barred by the Eleventh Amendment; (8) Plaintiff fails to allege that UTSA denied him any service or program or that any discrimination was because of his disability; (9) the EEOA applies only to certain "educational agencies" and is inapplicable to all three defendants; (10) Plaintiff's tort claims against the Millers are barred by the Texas Tort Claims Act; (11) the tort claims are barred because the Millers are entitled to official immunity; (12) Plaintiff fails to state a cause of action for the IIED claim; and (13) Plaintiff has failed to state specific facts sufficient to state a claim for invasion of privacy.

**Analysis**

1.  Due Process and Equal Protection Claim

Plaintiff alleges in Count One that all three defendants "conspired, colluded and confederated together to harm Plaintiff by denying him substantive due process and equal protection of the law, which resulted in Plaintiff's inability to graduate in the Spring of 2010 and which deprived Plaintiff of the opportunity to obtain the Alpha Phi Sigma scholarship."

It is understandable why Defendants presumed that Plaintiff was attempting to allege a due process and equal protection claim via 42 U.S.C. § 1983. Plaintiff cannot bring his due process

claim under the United States Constitution directly.[15] However, nowhere in Plaintiff's petition does he allege that he is asserting claims under the United States Constitution. In paragraph 4 of his Petition, Plaintiff only references the Texas Constitution.

Texas's guarantee of equal protection is in Tex. Const. art. I, 3, while its guarantee of due process is in Tex. Const. art. I, § 19. Insofar as Plaintiff seeks monetary damages for violations of the Texas Constitution, the Texas Supreme Court has confirmed that the Texas Constitution does not allow damages for violations of its provisions. *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148 (Tex. 1995). In this case Plaintiff seeks monetary damages. Plaintiff may, however, seek equitable relief under the Texas Constitution. In this case Plaintiff does not seek any equitable relief. Accordingly, Count I is dismissed.

2.   ADA Claim

Individual defendants are not personally liable for discrimination under Title II of the ADA. *D.A. v. Houston Independent School Dist.*, 716 F. Supp. 2d 603 (S.D. Tex. 2009), *aff'd*, *Latasha A. v. Houston Independent School Dist.*, 629 F.3d 450 (5th Cir. 2010). Accordingly, the individual

---

[15] "Defendant is correct that an alleged due process or other constitutional violation by a governmental unit does not give rise to a direct cause of action under the United States Constitution. *Hearth, Inc. v. Dep't of Pub. Welfare*, 617 F.2d 381, 382-83 (5th Cir.1980) (finding that 'the federal courts, and this Circuit in particular, have been hesitant to find causes of action arising directly from the Constitution,' and that 42 U.S.C. § 1983 provides the means for seeking relief against a state actor who violates the Constitution); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir.2001) ('[A] litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983.'); *Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1019 (8th Cir.2000) (holding that a 'claim may not be brought directly under the [F]ourteenth [A]mendment'). As Plaintiff's claim appears to rest upon an alleged denial of due process, her proper remedy would have been to assert a claim under 42 U.S.C. § 1983. Plaintiff cannot bring her due process claim under the United States Constitution directly, however, and this cause of action must therefore be dismissed for failing to state a claim upon which relief can be granted." *Morin v. Mental Health Mental Retardation Authority of Harris County*, Civ. A. No. H-05-2520, 2006 WL 6569694 (S.D. Tex. June 19, 2006).

defendants' motion for dismissal of the ADA claim against them is granted.

UTSA argues that a Title II ADA claim against it is barred by the Eleventh Amendment. That claim, however, has been rejected by the Fifth Circuit. *See Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448 (5th Cir. 2005), *cert. denied*, 547 U.S. 1098 (2006).

In the alternative, the University argues that Plaintiff has failed to plead sufficient facts in support of any ADA claim pursuant to *Twombly*.[16]

To make a prima facie case under Title II of the ADA, a plaintiff must show: (1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability. *Frame v. City of Arlington*, 616 F.3d 476, 482 (5th Cir. 2010) (*citing Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2000)).

Plaintiff states that he is dyslexic, but otherwise fails to allege any facts in support of the remaining two elements of his claim against UTSA. The University's 12(b)(6) motion to dismiss is granted.

3.     EEOA Claim

"The EEOA does not impose any obligation upon state higher education systems or authorities. The Act is limited in effect to the activities of state and local educational agencies at the elementary and secondary levels."  *U.S. v. LULAC,*, 793 F.2d 636, 649 (5th Cir. 1986). Accordingly, this claim is dismissed.

---

[16]*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

4.Intentional Infliction of Emotional Distress Claim (IIED)

Defendants' argument that this claim is barred by the Texas Tort Claims Act is without merit. Plaintiff does not assert this claim against the state university, but only against the professors in their individual capacities. Accordingly, Defendant's invocation of Tex. Civ. Prac. & Rem. Code § 101.106(e) is invalid. Nevertheless, for the reason stated below, dismissal of the IIED claim is still proper.

To state a claim for intentional infliction of emotional distress, a plaintiff must prove: "(1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999).

The Court finds that Plaintiff has not sufficiently alleged any conduct by Defendant that was "extreme and outrageous" as that term has been used in this context. Further, he has not alleged sufficient facts regarding severity. The Court therefore dismisses without prejudice Plaintiff's intentional infliction of emotional distress claim.[17]

5.Invasion of Privacy Claim

Defendants' argument that this claim is barred by the Texas Tort Claims Act is without merit. Plaintiff does not assert this claim against the state university, but only against Holly Ventura Miller. Accordingly, Defendant's invocation of Tex. Civ. Prac. & Rem. Code § 101.106(e) is invalid. Nevertheless, for the reason stated below, dismissal of this claim is still proper.

To establish a claim for the tort of invasion of privacy based on the public disclosure of

---

[17] Because the Court has dismissed the IIED claim under Rule 12(b)(6), the Court does not address Defendants' alternative argument of official immunity.

private facts, the plaintiff must show that (1) publicity was given to matters concerning his private life; (2) the publication of which would be highly offensive to a reasonable person of ordinary sensibilities; and (3) the matter publicized was not of legitimate public concern. *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473-74 (Tex. 1995). Plaintiff has merely restated the elements of this cause of action in his Petition. This is insufficient under *Twombly*. The Court therefore dismisses without prejudice Plaintiff's invasion of privacy claim.

## Conclusion

Inasmuch as Plaintiff seeks monetary damages for violations of the Texas Constitution, Count I is dismissed with prejudice. The individual defendants' motion for dismissal of the ADA claim against them is granted. Plaintiff states that he is dyslexic, but otherwise fails to allege any facts in support of the remaining two elements of his ADA claim against UTSA. The University's 12(b)(6) motion to dismiss the ADA claim without prejudice is granted. The EEOA claim is dismissed. The IIED claim and invasion of privacy claims are dismissed without prejudice pursuant to Rule 12(b)(6).

The Clerk is instructed to issue a judgment that Plaintiff take nothing and close this file.

It is so ORDERED.

SIGNED this 6th day of September, 2011.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE